[820 NYS2d 619]

In the Matter of MARK L. JACOBS (Admitted as MARK LOUIS JACOBS), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, August 22, 2006

APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Mark F. DeWan* of counsel), for petitioner.

## OPINION OF THE COURT

Per Curiam.

The petitioner Grievance Committee for the Second and Eleventh Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition containing 13 charges of professional misconduct, and the respondent served an answer and an amended answer. Following a preliminary conference, a hearing was held. The Grievance Committee submitted 28 exhibits into evidence and presented the testimony of nine witnesses. The respondent appeared pro se, testified on his own behalf, and submitted 22 exhibits into evidence. The Special Referee sustained Charges Two (B), (C) and (D), and Charges Five, Six, Seven and Twelve in full. He did not sustain Charges One, Two, in part, Three, Four, Eight, Nine, Ten, Eleven and Thirteen. The Grievance Committee now moves to confirm the report of the Special Referee insofar as it sustained the charges, to disaffirm the report insofar as it did not sustain the charges, and for this Court to impose such discipline as is deemed appropriate. Although served with a copy of the Grievance Committee's motion, the respondent has not submitted any response or cross motion.

Charges One through Four concern the respondent's failure to fulfill his fiduciary obligations with respect to settlement funds received by him on behalf of his client Uriel Arias-Catano.

Charge One alleged that the respondent converted to his own use funds that had been entrusted to him as a fiduciary incident to his practice of law.

In or about November 2000 the respondent settled a personal injury matter on behalf of Catano for $22,500. On or about November 17, 2000, the respondent deposited the insurance carrier's check in the sum of $22,500 into an HSBC account denominated "The Law Offices of Mark L. Jacobs, IOLA Ac-

count." Prior to this deposit, the balance in the respondent's IOLA account was $10,306.12.

On or about November 17, 2000, the respondent drew IOLA account check No. 1001 to himself, in the amount of $7,133.65, representing his legal fee, and check No. 1004 to himself, in the amount of $1,099.05, to cover disbursements.

On or about December 20, 2000, the respondent drew IOLA account check No. 1005 to the order of Catano in the amount of $7,330, on which he wrote "Medical liens payment."

On or about December 21, 2000, the respondent endorsed IOLA account check No. 1005, by writing the words, "Uriel de Jesus Catano, Pay to the order of Mark Jacobs," without Catano's knowledge or consent. The respondent then signed his own name on check No. 1005 and deposited it into his law firm's operating account. Prior to this deposit, the balance in the respondent's operating account was only $56.19.

On or about December 21, 2000, at the respondent's direction, an HSBC teller's check was drawn against the respondent's operating account, in the amount of $6,375, to the order of Harmod Farahan, the respondent's landlord for his personal residence, and the respondent delivered the teller's check to Farahan's attorney, to pay outstanding rent.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

Charge Two (A) alleged that the respondent intentionally misrepresented to Catano the amount of settlement proceeds to which he was entitled, to conceal the fact that the respondent had converted a portion of that settlement to his own use.

On or about January 31, 2001, the respondent drew IOLA account check No. 1016, in the amount of $4,887.30, to the order of Catano. In a cover letter dated February 2, 2001, the respondent falsely stated to Catano that the enclosed IOLA account check represented his share of the settlement proceeds and that liens for medical care amounted to $9,380, thereby reducing Catano's share of the settlement proceeds by that amount. In fact, in December 2000 the respondent had converted a portion of Catano's share of the settlement proceeds to his own use.

By reason of the foregoing, pursuant to Charge Two (B), the respondent violated Code of Professional Responsibility DR 7-102 (a) (5) (22 NYCRR 1200.33 [a] [5]). Pursuant to Charge Two (C), the respondent violated Code of Professional Responsi-

bility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]). Pursuant to Charge Two (D), the respondent violated Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge Three alleged that the respondent failed to fulfill his obligation to pay the remainder of Catano's share of the settlement proceeds.

On or about April 11, 2001, the respondent drew IOLA account check No. 1020 to the order of Catano in the amount of $2,000. In or about November 2001 the respondent agreed to pay the remainder of Catano's share of the settlement proceeds, in the amount of $7,380, on or before December 14, 2001. On or about November 14, 2001,the respondent executed a promissory note in the amount of $7,380 payable to Catano to memorialize the respondent's agreement. To date, the respondent has failed to pay the remainder of Catano's share of the settlement proceeds.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 7-102 (a) (5) (22 NYCRR 1200.33 [a] [5]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

Charge Four alleges that the respondent falsely testified and provided false written answers in relation to legitimate investigations by petitioner.

On or about January 30, 2002, the Grievance Committee received a complaint of professional misconduct against the respondent from Catano, who alleged that the respondent had still failed to pay the remainder of his share of the settlement proceeds.

On March 21, 2002, during an investigative session at the Grievance Committee's office, the respondent testified that he properly disbursed Catano's settlement proceeds. In fact, in December 2000 the respondent had converted a portion of Catano's share of the settlement proceeds to his own use.

By letter dated March 21, 2002, counsel to the Grievance Committee directed the respondent to provide a complete explanation of his handling of Catano's settlement proceeds, including IOLA account check No. 1005, in a written answer to be submitted on or before April 8, 2002. By letter to counsel to the petitioner dated April 4, 2002, the respondent requested additional time to submit his written answer to Catano's complaint. By letter dated April 22, 2002, counsel for the Grievance Committee again directed the respondent to provide a

complete explanation of his handling of Catano's settlement proceeds, including IOLA account check No. 1005. The respondent was directed to submit his written answer on or before May 6, 2002.

In a May 15, 2002, written answer to Catano's complaint, the respondent failed to provide a complete explanation of his handling of Catano's settlement proceeds, including IOLA account check No. 1005 and to state that in December 2000, he had converted a portion of Catano's share of the settlement proceeds to his own use.

By letter dated January 24, 2003, the Grievance Committee directed the respondent to provide a complete explanation of his handling of Catano's settlement proceeds, including IOLA account check No. 1005 on or before February 4, 2003. By letter dated February 4, 2003, the Grievance Committee granted the respondent's request for additional time to submit his additional written answer and directed the respondent to provide a complete explanation of his handling of Catano's settlement proceeds, including IOLA account check No. 1005, on or before February 24, 2003.

By letter to the Grievance Committee dated February 22, 2003, the respondent falsely stated that he could not provide the complete explanation as directed because he did not possess certain bank records relating to Catano's matter and failed to state that in December 2000, he had converted a portion of Catano's share of the settlement proceeds to his own use.

In the respondent's additional written answer, dated December 4, 2003, he falsely stated that in December 2000 he asked Catano to lend him $7,330 from the settlement proceeds and that Catano agreed, and that Catano authorized him to endorse Catano's signature on IOLA account check No. 1005. In the additional written answer, the respondent failed to state that in December 2000 he converted a portion of Catano's share of the settlement proceeds to pay outstanding rent on the respondent's personal residence.

On December 12, 2003, the respondent testified at a second investigative session at the Grievance Committee's office and falsely testified that in December 2000 he asked Catano to lend him $7,330 from the settlement proceeds, that Catano agreed to lend him $7,330 from the settlement proceeds, and that Catano authorized him to endorse client Catano's signature on IOLA account check No. 1005.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [7]).

Charges Five through Nine and Charge Twelve relate to allegations that the respondent neglected legal matters entrusted to him by various clients.

Charge Five alleges that the respondent neglected a legal matter entrusted to him by client Shirley Goicochea in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about October 1991, the respondent was retained by Goicochea to prosecute a personal injury matter. Between October 1991 and January 2000 the respondent performed certain legal services. After January 2000 the respondent failed to take any further action on behalf of Goicochea.

Charge Six alleges that the respondent neglected a legal matter entrusted to him by client Rose Shields in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about October 1992 the respondent was retained by Shields to prosecute a personal injury matter. Between October 1992 and February 2001 the respondent performed certain legal services on behalf of Shields. After February 2001 the respondent failed to take any further action on behalf of Shields.

Charge Seven alleges that the respondent neglected a legal matter entrusted to him by client Gloria Cheatham-Walters in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about July 1995 the respondent was retained by Cheatham-Walters to defend her in a lawsuit involving a rental car agreement. Between July 1995 and October 1996 the respondent performed certain legal services on her behalf. After October 1996 the respondent failed to take any further action on behalf of Cheatham-Walters.

Charge Eight alleges that the respondent neglected a legal matter entrusted to him by client Wilma London in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about August 1998 the respondent was retained by London to represent her interests as executrix for the estate of

Bertha McBride, her aunt. Between August 1998 and June 1999 the respondent performed certain legal services on London's behalf. After June 1999 he failed to take any further action on behalf of London. ·

Charge Nine alleges that the respondent neglected a legal matter entrusted to him by client Luisa Devers-Abreu in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about August 1998 the respondent was retained by Devers-Abreu to represent her interests in three pending lawsuits. Between October 1998 and June 1999 the respondent performed certain legal services on behalf of Devers-Abreu. After June 1999 the respondent failed to take any further action on her behalf.

Charge Twelve alleges that the respondent neglected two legal matters entrusted to him by client Gustavo Penuela in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about October 1998 the respondent was retained by Penuela to prosecute two personal injury matters. Between October 1998 and November 2002 the respondent performed certain legal services on behalf of Penuela. After November 2002 the respondent failed to take any further action on Penuela's behalf.

Based upon the evidence presented and the inferences to be drawn therefrom, the Special Referee properly sustained Charges Two (B), (C) and (D), Five, Six, Seven and Twelve, and properly did not sustain Charges Ten, Eleven and Thirteen. However, contrary to the Special Referee's report, we find that the Grievance Committee sustained its burden in establishing the respondent's professional misconduct with respect to Charges One, Two (A), Three, Four, Eight and Nine. Accordingly, the Grievance Committee's motion to confirm, in part, and disaffirm, in part, is granted in part, to the extent of confirming the Special Referee's report sustaining Charges Two (B), (C) and (D), Five, Six, Seven and Twelve, and disaffirming the Special Referee's report with respect to Charges One, Two (A), Three, Four, Eight and Nine, and the Grievance Committee's motion is denied with respect to disaffirming the Special Referee's report to the extent that it did not sustain Charges Ten, Eleven and Thirteen. In summary, all of the charges should

have been sustained with the exception of Charges Ten, Eleven and Thirteen.

In determining an appropriate measure of discipline to impose, the Grievance Committee advises of the respondent's prior disciplinary history. On October 12, 1999, the respondent was personally admonished for neglecting four legal matters and for failing to maintain proper communication with respect to the complaints of several clients.

On April 18, 1995, the respondent received a letter of admonition for neglecting a clients's legal matter and repeatedly misrepresenting its status to his client.

On June 24, 2003, the respondent received a letter of caution for failing to reregister with the Office of Court Administration.

In mitigation, the respondent submitted two letters from a psychiatrist who diagnosed the respondent as suffering from depression and stated that he has been treating him since spring 1998. More recently, the psychiatrist also diagnosed the respondent with adult attention deficit disorder, and stated that it is his clinical judgment that the respondent's depression contributed to the difficulties he has had in his practice of law.

The respondent testified that he has had financial difficulties, as well as family, medical, and emotional problems. His 20-year partnership with another attorney ended in September 2000 after they fell behind in the rent and their lease was expiring. According to the respondent, they came to an understanding that they should no longer be in a partnership.

Notwithstanding the mitigation advanced, the respondent is guilty of conversion and repeatedly engaging in serious professional misconduct negatively impacting his clients. Under the totality of circumstances, effective immediately, he is disbarred.

PRUDENTI, P.J., FLORIO, MILLER, SCHMIDT and GOLDSTEIN, JJ., concur.

Ordered that the petitioner's motion to confirm, in part, and disaffirm, in part, is granted in part, to the extent of confirming the Special Referee's report sustaining Charges Two (B), (C) and (D), Five, Six, Seven and Twelve, and disaffirming the Special Referee's report with respect to Charges One, Two (A), Three, Four, Eight and Nine, and the petitioner's motion is denied with respect to disaffirming the Special Referee's report to the extent that it did not sustain Charges Ten, Eleven and Thirteen; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Mark L. Jacobs, admitted as Mark

Louis Jacobs, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Mark L. Jacobs, admitted as Mark Louis Jacobs, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, Mark L. Jacobs, admitted as Mark Louis Jacobs, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Mark L. Jacobs, admitted as Mark Louis Jacobs, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).